IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CRAIG STEVEN HOWARD,**

        **Plaintiff,**

vs.                               No. CIV 00-1693 LH/LCS

**THE DOÑA ANA COUNTY
DETENTION CENTER, et al.,**

        **Defendants.**

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    **THIS MATTER** is before the Court on Defendant Doña Ana County Detention Center's Motion for Partial Summary Judgment filed March 1, 2001 (*Doc. 9*). The Court having considered the submissions of the parties, relevant law, and being otherwise fully advised, finds the motion to be well taken, and recommends that it be **granted.**

### I. Background

    1.    The following statement of facts is set forth in the light most favorable to the Plaintiff, with all reasonable inferences from the record drawn in his favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir.1997). On October 1, 1999, Craig Howard (hereinafter "Howard") was involved in an altercation with other inmates at the Doña Ana County Detention Center. (Ex. G to Martinez Report). The fight took place in "F Pod Dayroom," a common area shared by all inmates, which is closed off by a locked doorway. (Ex. B to Martinez Report). All inmates in that particular pod share the dayroom from 6:00 a.m. to 11:00 p.m. (Ex. B to Martinez Report).

    2.    Starting in the fall before the October, 1999 fight, inmates were permitted to participate in an inmate-led Bible study group. (Ex. B). Although the inmates were allowed to hold

1

the group in the common area dayroom, the group was limited to ten individuals who were required to sign-up in advance. (Ex. B). Howard asserts that other inmates directed their anger towards him when "lockdown" was moved up to 10:30 p.m. from 11:00 p.m. in order to hold the Bible study. (Pl. Brief at 2).

      3.      On September 30, 1999, Howard was leading the Bible study group session. (Pl. Brief at 2). From the control room, Officer Richard opened the cell doors electronically for the inmates participating in that evening's study group. Inmates Stockwell and McWhorter, both of whom were not on the list for that evening, left their cells in order to participate in the group. Once the two inmates were told to return to their cells, they became angered and threatened Howard. (Pl. Brief at 2-3). Incident reports state that the inmates were angry because they thought Howard was responsible for making the list and that he was purposefully excluding white inmates and including only black inmates. (Ex. C). Officer Richard subsequently escorted the two inmates back to their cells and reported the incident to fellow Officer Martinez as well as the day shift detention officers. (Exs. B, C and D). Howard asserts that as he was walking back to his cell, Stockwell along with other inmates said they would see Howard at breakfast and that "they will get [him] at 6:00a.m." (Pl. Brief at 3). Howard also asserts that Officer Cardon was aware of prior threats made towards the Plaintiff from "gang members" in F-Pod and that she would normally talk to the inmates before letting them out of "lock-down." (Pl. Brief at 3).

      4.      The morning after the September 30 Bible study incident, all inmates were released from their cells for breakfast at 6:00 a.m. (Ex. H). Daytime shift Officer Lewis stated in his affidavit that because the conflict the night before was verbal and non-physical and because they had a seven-

hour "cool-down period," he thought it was appropriate to release all of the inmates together for breakfast. (Ex. F). According to the Plaintiff, when he exited his cell that morning for breakfast, Stockwell and McWhorter approached him and began a verbal confrontation. (Pl. Brief at 5). The verbal confrontation quickly escalated into a physical altercation where the inmates started beating the Plaintiff. (Pl. Brief at 5). Howard asserts that approximately four other inmates also joined Stockwell and McWhorter in the fight. (Pl. Brief at 5). During the fight, Howard fell to the floor, was stabbed in the eye with a pen and received a broken nose. (Pl. Brief at 5-6). Howard also notes that once the fight started, the officer closed the door to the dayroom.

     5.     Officer Robert Lewis, the officer on duty at the time of the incident, states within his incident report, that when he noticed inmates fighting, he called for back-up assistance. (Ex. H). Officer Lewis did not see the participants in the fight nor the person who stabbed the Plaintiff. (Ex. H). However, Officer Lewis did see that inmates Stockwell, Estrada and Gonzales were involved in the fight. After he called for back-up, he flashed the lights in the dayroom to get uninvolved inmates back in their cells. (Ex. H). Once the officers arrived, they finished locking down the remaining inmates and Howard was subsequently taken to the hospital. (Ex. H; Pl. Brief at 6). The Martinez report contains conflicting reports concerning the nature of the fight on October 1, 1999, specifically, who actually initiated it and who participated. (Ex. G and O).

     6.     Once the officers broke up the fight, the Las Cruces Police Department was dispatched to the facility in order to investigate the incident. (Ex. G). The Police Department took statements from the inmates and performed its own investigation. However, to date there have been no criminal charges filed.

7.      One of the exhibits in the Martinez Report is an Inmate Grievance Form. (Ex. Z). The form states that "[w]e the inmates in pod D-4 been having trouble with inmate Craig Howard. We don't want to cause any trouble but if you don't take this inmate out of this pod something bad is going to happen." (Ex. Z) (emphasis added). The form was signed by several inmates but was not dated. Although there is nothing in the record attesting to Howard's multiple transfers from pod to pod, the night of the incident he was housed in F pod. (Ex. H, I and J). Previously, he was housed in G pod, where there was another physical confrontation between inmates that involved Howard in November, 1998. (Ex. I). Howard also admits that he has been moved from pod to pod due to threats by other inmates. (Pl. Response at 4). Therefore, to date, the Plaintiff has been transferred within the facility at least twice: from "G pod" to "D pod" and from "D pod" to "F pod." It is unknown where the Plaintiff is currently detained within the facility.

8.      On October 30, 2000, Howard filed a Civil Complaint for Torts in the Third Judicial District of New Mexico. In that complaint, Howard alleged the following claims: (1) negligence under the laws of New Mexico and the New Mexico Tort Claims Act; and (2) deliberate indifference to Plaintiff's safety. The Defendants subsequently filed a Notice of Removal in federal court on November 29, 2000. Their grounds for removal were based on the Plaintiff's "deliberate indifference" claim.[1] These claims, as alleged by the Plaintiff and interpreted by the Court, constitute deliberate indifference to his safety, in violation of the Eighth Amendment ban on cruel and unusual punishment.

---

[1]    In a Recommended Disposition Determining Subject-Matter Jurisdiction, I found that "[w]ith respect to 42 U.S.C. §1983, the Supreme Court has ruled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.'" *Estelle v. Gamble*, 97 S.Ct. 285, 291 (1976) (citing *Gregg v. Georgia*, 428 U.S. 154, 182-83 (1976));See also *Fleming v. Uphoff,* 210 F.3d 389 (10th Cir. 2000)(stating that 'deliberate indifference to serious medical needs of prisoners' constitutes a violation of the Eight Amendment)." (*Doc. 8*). The District Judge adopted my Recommended Disposition on January 9, 2001. (*Doc. 7*).

## **II. Standards for Summary Judgment**

9.      Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 90 S. Ct. 1598 (1970); *see also Quaker State Minit-Lube, Inc. v. Firemans Fund Ins. Co.*, 52 F. 3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U. S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

10.     Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); *see also Biester v. Midwest Health Servs, Inc.*, 77 F. 3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. FED. RULE CIV. PRO. 56(c); *see also Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991).

11.     The mere existence of a scintilla of evidence in support of the nonmovants position is insufficient to create a dispute of fact that is genuine. *See Lawmaster v. Ward*, 125 F. 3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See Anderson*, 477 U.

S. at 249. Thus, the courts inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one- sided that one party must prevail as a matter of law. *Id.* at 251-52. The court in considering a motion for summary judgment construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Perry v. Woodward*, 199 F. 3d 1126, 1131 (10th Cir. 1999).

### III. Analysis

12.    In the Plaintiff's complaint, Howard asserts one federal claim, i.e., the officers of the Doña Ana County Detention Facility failed to perform their duties and were deliberately indifferent to his safety while he was engaged in a fight with other inmates. Specifically, the Plaintiff asserts that the "defendants, being aware of the potentially dangerous situation that could arise if the plaintiff were in specific housing units, placed him in one of these units anyway, demonstrating deliberate indifference for plaintiff's safety." (Compl. at 3). At the time the Plaintiff was assaulted, it is unclear whether he was a convicted prisoner or a pretrial detainee. Regardless of his status, both pretrial detainees and convicted prisoners are protected by the strictures of the deliberate indifference standard of the Eighth Amendment.[2] After reading the facts in a light most favorable to the Plaintiff, the Court finds that the only federal claim asserted is that the officers of the Doña Ana County Detention Facility failed to prevent inmates from

---

[2]    Pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861 (1979). In determining whether the plaintiff's rights were violated, however, a court should apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983. *See Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir.1996). Therefore, even if a plaintiff is a pretrial detainee, the deliberate indifference standard as applied in Eighth Amendment cases applies in this case as well. *See Lopez v. LeMaster*, 172 F. 3d 756, 762 (10th Cir. 1999) (applying deliberate indifference standard used in Eighth Amendment cases to claims for failing to prevent assault and for failure to respond to detainee's medical needs).

assaulting the Plaintiff on October 1, 1999. No facts beyond this incident have been asserted. Therefore, the Court will focus its analysis on whether the officers were deliberately indifferent to the Plaintiff's safety on the morning of October 1, 1999.

13. The Defendants assert that all of the officers acted reasonably under the circumstances. Officers Richard and Martinez, officers present at the Bible study incident the night before the fight, were aware of the verbal confrontation between Howard, Stockwell and McWhorter. (Ex. C and D). Officer Richard personally escorted Stockwell and McWhorter back to their cells in order to avoid any physical confrontation. Howard was then allowed to continue with his Bible study group. Officer Martinez subsequently informed the officers on duty the next day of the incident in order for them to keep close surveillance on the inmates. (Ex. D). The next morning, Officer Lewis stated that because the conflict the night before was verbal and non-physical and because they had a seven-hour "cool-down period," he thought it was appropriate to release all of the inmates together for breakfast. (Ex. F). The Defendants argue that they took "reasonable measures" in order to abate any physical confrontation between the inmates.[3]

14. A prisoner has the right under the Eighth Amendment's ban on cruel and unusual punishment principle to be reasonably protected from constant threats of violence from other inmates. *See Riddle v. Mondragon*, 83 F. 3d 1197, 1204 (10th Cir. 1996). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1976 (1994) (quotation omitted). "[T]he failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison

---

[3] There is conflicting evidence in the record as to who actually started the fight the morning of October 1, 1999. (Ex. G and O).

official's conduct amounts to an obdurate and wanton disregard for the inmate's safety." *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir.1992). Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *See Riddle*, 83 F.3d at 1204 (quoting *Farmer*, 511 U. S. at 834).

15.     To recover on an Eighth Amendment claim for failure to protect, an inmate must allege and prove two elements: (1) he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official has a sufficiently culpable state of mind, indicative of deliberate indifference to the inmates health and safety. *See Riddle*, 83 F.3d at 1204; *see also Grimsley v. MacKay*, 93 F. 3d 676, 680 (10th Cir. 1996). The first element is an objective test. The Eighth Amendment deprivation alleged must be, from an objective point-of-view, "sufficiently serious" to warrant judicial intrusion. *See Farmer*, 511 U. S. at 834. The second element of the Eighth Amendment claim is a subjective test; one where "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must he must also draw the inference." *Id.* at 837.

16.     The question to be decided on this motion, therefore, is whether a genuine issue of material fact exists as to the elements of the Eighth Amendment cause of action; that is, whether there is sufficient evidence from which a jury could find that Howard was subjected to a substantial risk of serious harm, and whether the prison officials were aware of facts from which they could and did draw the inference that such a risk existed, but were nevertheless deliberately indifferent to Howard's plight.

17.     In this case, the Plaintiff maintains that Defendants knew of the substantial risk

posed to him by other inmates because they were aware of the "threats" made to him the night before he was attacked. To support his claim of Defendants' knowledge, Howard relies primarily on his own allegations and the fact that he was threatened before in other pods.

18. Assuming there is sufficient evidence establishing a substantial risk of serious harm the morning of the fight, the Court must still interpret the "deliberate indifference" standard posed in *Riddle* and *Farmer* and look to whether the officials' actions were taken to restore discipline or whether they acted "'maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)(*reversed* on other grounds)). While the Eighth Amendment imposes the requirement on prison officials to restore control in tumultuous situations, *see Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir.1993), "officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state." *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir.1992). Under the deliberate indifference standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

19. The subjective component of the deliberate indifference standard was defined by the Supreme Court in *Farmer*. The Supreme Court made it clear that even though it was adopting a subjective definition of recklessness, an official's subjective knowledge can be proven by drawing inferences from all available evidence, including objective facts. A fact finder could conclude that a prison official actually knew of a substantial risk from the fact that the risk was obvious. *Id*. at 842.

"For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id*. at 842-43 (citation omitted).

20.     If a prison official is actually aware of a substantial risk of harm, he must respond reasonably to that risk. That is, "a prison official's duty under the Eighth Amendment is to ensure 'reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Id*. at 845-46 (citation omitted). A prison official cannot be held liable, therefore, if he responded reasonably to the risk, even if harm to an inmate was not ultimately averted. *Id.* at 845. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. *See also Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir.1996).

21.     In this case, the record fails to show that the officers <u>deliberately</u> or even <u>recklessly</u> ignored inmate "threats" the night before the fight, thereby disregarding an excessive risk of harm to the Plaintiff. It may be argued that the Defendants had superior knowledge about dangers posed by the prison environment, and about particularly dangerous inmates. However, nothing in the record suggests that any of the officers drew any inference that inmates Stockwell, Estrada

10

and Gonzales posed a substantial risk of harm to the Plaintiff. It could also be argued that the Defendants acted negligently by allowing all inmates eat breakfast together the morning after a verbal confrontation. However, "deliberate indifference describes a state of mind more blameworthy than negligence."*See Farmer*, 511 U. S. at 835. Even if Howard was the subject of hostility the evening prior to the fight and the officers were aware of "threats" made by various inmates, this single incident does not raise a genuine issue of material fact whether Plaintiff was subject to a substantial risk of harm. This single incident falls short of the proof needed to support the "sufficiently culpable state of mind" standard. As stated in *Farmer*, what is generally needed to constitute sufficient evidence of actual knowledge is that of "longstanding, pervasive, and well-documented" instances of possible risks to inmate safety. *Farmer*, 511 U.S. at 842-43.

22.     In addition, the Plaintiff admits that he has been transferred from "pod" to "pod" in light of previous threats and fights. (Pl. Brief at 6 and 7). The Plaintiff's own admission leaves this Court to believe that when Howard was in danger of risks in the past, the officers remedied the situation by transferring him to another pod in the facility.

23.     I find the facts, as viewed in a light most favorable to the Plaintiff, are insufficient to go to the jury on the issue of whether any of the officers were aware of facts which would lead them to draw the inference that Howard's presence in F pod placed him at substantial risk of serious harm.[4] As noted above, the standard on the second prong of the deliberate indifference

---

[4] When a party's state of mind is at issue, summary judgment is generally inappropriate. *See Seamons v. Snow*, 206 F. 3d 1021, 1027 (10th Cir. 2000). However, "summary judgment can be granted, even in a case involving allegations of deliberate indifference in the prison context, if the plaintiff's allegations . . . implicate only defendant's negligence and do not establish the more culpable state of mind necessary to support claims of the denial of a constitutional right." *White v. Colorado*, 82 F. 3d 364, 367 (10th Cir. 1996).

11

test is a subjective one, in that it is not enough that the official should have been aware of the risk of serious harm; rather, he or she must actually have known. *See Craig v. Eberly*, 164 F. 3d 490, 495-96 (10th Cir. 1998). It is apparent there is no evidence implying that the officers acted "'maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). Nor is there any evidence that the officers had knowledge of a substantial risk posed by other inmates. If anything, the officers' actions describe the contrary. They had taken steps in the past to avoid this very outcome, but, in this situation were subject to unavoidable circumstances. Therefore, I recommend granting the Defendant's Motion for Partial Summary Judgment with respect to the Plaintiff's federal claim.

### **Recommended Disposition**

I recommend GRANTING the Defendant Doña Ana County Detention Center's Motion for Partial Summary Judgment (*Doc. 9*), filed March 1, 2001. I further recommend that the Plaintiff's federal deliberate indifference claim be dismissed with prejudice and that the remaining state negligence claims be remanded to the Third Judicial District of New Mexico. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of

the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

						_____
						**LESLIE C. SMITH**
						**UNITED STATES MAGISTRATE JUDGE**